IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WELLS FARGO BANK, N.A., as          *
trustee for                         *
SOUNDVIEW HOME LOAN TRUST           *
2007-OPT1, ASSET-BACKED             *
CERTIFICATES, SERIES 2007-OPT1      *
                                    *
v.                                  *        Civ. No. WMN-15-2882
                                    *
FIRST AMERICAN TITLE INSURANCE CO.  *

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Before the Court are cross motions for summary judgment
filed by Defendant First American Title Insurance Company (First
American or Defendant), ECF No. 39, and by Plaintiff Wells Fargo
Bank, N.A., as trustee for Soundview Home Loan Trust 2007-OPT1,
Asset-Backed Certificates, Series 2007-OPT1 (Wells Fargo or
Plaintiff).  ECF No. 40.  The motions are fully briefed.  Upon
review of the motions and the applicable case law, the Court
determines that no hearing is necessary, Local Rule 105.6, and
that the motion of First American will be granted and the motion
of Wells Fargo denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Wells Fargo brought this action alleging that First
American improperly denied Wells Fargo's claim under a title
insurance policy issued by First American.  Briefly stated,
Wells Fargo brought a claim under the policy after its lien was

extinguished in a foreclosure proceeding.  First American denied the claim on the ground that Wells Fargo failed to provide it with notice of the foreclosure proceeding in a timely manner, as Wells Fargo was required to do under the terms of the title insurance policy, and that the late notice caused it actual prejudice.  The facts relevant to this dispute are largely undisputed and are as follows.

On or about September 29, 1994, Thomas and Derry Hardnett purchased real property known as 7405 Kathydale Road in Baltimore, Maryland, (the Property) for $111,000.00.  The Hardnetts financed the purchase with a loan from United Mortgage & Financial Services for $110,941.00 (the Purchase Money Loan). This loan was secured by the Property under a deed of trust dated September 29, 1994, which was recorded in the Land Records of Baltimore County (Purchase Money Deed of Trust).

On or about September 4, 1998, Little Dimples Enterprises, Inc. (Little Dimples), a Maryland corporation owned by the Hardnetts, obtained a loan of $130,000 from the Bank of America, FSB (Bank of America), under a program of the United States Small Business Administration (the Little Dimples Loan).  A deed of trust was executed which purported to secure the Little Dimples Loan with the Property and that deed of trust (the Little Dimples Deed of Trust) was recorded in the Land Records

of Baltimore County, and then re-recorded to correct a typographical error as to the amount of the loan. The Little Dimples Deed of Trust, however, listed Little Dimples as the "grantor" of the interest in the Property, despite the fact that it is undisputed that Little Dimples had no ownership interest in the Property. The deed was signed by Thomas and Derry Hardnett.

On or about October 23, 2006, the Hardnetts refinanced the Purchase Money Loan with a new loan from Cooper & Shein, LLC d/b/a Great Oak Lending Partners in the principal amount of $185,250.00 (the Great Oak Loan). This loan was secured by the Property under a deed of trust dated October 23, 2006, which was also recorded among the Land Records of Baltimore County. (the Great Oak Deed of Trust). The Hardnetts used $89,015.39 of the Great Oak Loan to satisfy and retire the Purchase Money Loan and to obtain a release of the Purchase Money Deed of Trust.

Five months later, on or about March 19, 2007, the Hardnetts refinanced again, this time with loan of $240,000.00 from Option One Mortgage Company (Option One). This loan (the Plaintiff's Loan) was secured by the Property under a deed of trust executed on that same date and subsequently recorded in the Land Records of Baltimore County (Plaintiff's Deed of Trust). The Hardnetts used $192,618.04 of the Plaintiff's Loan

to satisfy and retire the Great Oak Loan and obtain a release of the Great Oak Deed of Trust.  This loan was subsequently assigned to and transferred to Plaintiff.

The closing of the Plaintiff's Loan was performed by Huntington Title & Escrow Company (Huntington Title).  In conjunction with the closing, Huntington Title issued a First American title insurance policy (the Title Policy).  ECF No. 40-8.  The Title Policy provided that Option One, its successors and assigns, as their interests may appear, was insured against loss or damage, sustained or incurred by the insured by reason of, <u>inter alia</u>,

> 2. Any defect in or lien or encumbrances to the title;
>
> 3. Unmarketability of the title;
>
> . . .
>
> 5. The invalidity or unenforceability of the lien of the insured mortgage;
>
> 6. The priority of any lien or encumbrance over the lien of the insured mortgage.
>
> . . .
>
> The company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

<u>Id.</u> at 8-9.

4

The Title Policy, however, also contained the following
provision regarding "Notice of Claim to be Given by Insured
Claimant:"

> The Insured shall notify [First American] promptly in
> writing . . . in case Knowledge shall come to an
> Insured hereunder of any claim of title or interest
> which is adverse to . . . the lien of the Insured
> Mortgage, as insured, and which might cause loss or
> damage for which [First American] may be liable by
> virtue of this policy . . . .  If prompt notice shall
> not be given to [First American], then as to the
> Insured, all liability of [First American] shall
> terminate with regard to the matter or matters for
> which prompt notice is required; provided, however,
> that failure to notify [First American] shall in no
> case prejudice the rights of any Insured under the
> policy unless [First American] shall be prejudiced by
> the failure and then only to the extent of the
> prejudice.

Id. at 11.  Upon receipt of notice of an adverse claim, the
Title Policy gave First American the rights to: (1) "select
counsel of its choice (subject to the right of the insured to
object for reasonable cause) to represent" Plaintiff (2)
"institute and prosecute any action or proceeding or to do any
other act which in [First American's] opinion may be necessary
or desirable to establish the . . . the lien of [Plaintiff's
Deed of Trust], as insured, or to prevent or reduce loss or
damage to the [Plaintiff];" (3) pay or otherwise settle the title
claim with Plaintiff and be subrogated to all rights and remedies
the Plaintiff had against any person or property relative to the

title claim; and (4) pay or settle with other parties to resolve the Plaintiff's title claim. Id. at 11-12.

On or about March 27, 2008, First American received a letter from NC Ventures, Inc. (NC Ventures) informing First American that NC Ventures had purchased the Little Dimples Loan from the Bank of America. The letter stated that "our mortgage is still in 1st lien position and has not been released" and further requested that "this title issue be addressed." ECF No. 40-12. First American investigated the issue and on April 11, 2008, sent a letter to NC Ventures stating that, because Little Dimples was identified as the "Grantor" on the Little Dimples Deed of Trust and, because the "Grantor" on the deed of trust was not in title to the Property, the Little Dimples Deed of Trust "has never attached to the Property in order to encumber the Property with any lien, much less a lien that is superior to the lien insured by First American." ECF No. 40-13. First American also opined in that letter that it was because of the fact that the "Grantor" on the Little Dimples Deed of Trust was outside the chain of title to the Property that this deed of trust was not discovered when Huntington Title ran title searches for subsequent refinance transactions. Id. at 3 n.2. NC Ventures made no reply to this letter.

On or about May 17, 2011, however, the holder of the Little Dimples Loan instituted foreclosure proceedings against the Property in the Circuit Court for Baltimore County. On or about

July 27, 2011, notice of the impending foreclosure sale (the Notice) was sent to Option One, the record holder of Plaintiff's Loan, notifying Option One that the Property would be sold at a foreclosure sale on August 11, 2011, and identified the deed of trust being foreclosed upon. The Notice was sent by certified mail and was signed for by Option One on August 1, 2011. Option One sent the Notice to American Home Mortgage Servicing, Inc. (AHMSI), which was authorized to accept such notices on behalf of the holder of Plaintiff's Loan and AHMSI acknowledged receipt of the Notice on August 3, 2011.

Wells Fargo concedes that actual notice of the foreclosure was also provide to AHMSI by the Hardnetts. On August 2, 2011, the Hardnetts faxed a letter to AHMSI, enclosing a copy of the Notice. Mr. Hardnett explained in his letter: that Bank of America had sold the Little Dimples Loan to a collection agency; that this collection agency was attempting to foreclose on the Property; that he disputed the validity of the Little Dimples Deed of Trust; and that the collection agency was claiming that it was owed $88,000. Mr. Hardnett asked for AHMSI's assistance in stopping the foreclosure. The Hardnetts also telephoned AHMSI numerous times about the foreclosure.

The foreclosure sale went forward on August 11, 2011, and the Property was sold for $95,000. The sale was ratified by the

Circuit Court on November 21, 2011, and on December 29, 2011,
the Property was transferred to the substituted purchaser by
deed of trust which was recorded in the Land Records of
Baltimore County and which wiped out Plaintiff's interest in the
Property.  The Circuit Court ratified the auditor's report of
the sale on January 24, 2012.

On January 30, 2012, Plaintiff, through counsel, submitted
a title claim to First American under the Title Policy (the
Title Claim).  ECF No. 40-16.  The Title Claim informed First
American that the holder of the Little Dimples Deed of Trust had
filed the foreclosure action on May 17, 2011, that Plaintiff
"received proper Notice of the foreclosure sale pursuant to
Maryland Rule 14-210, and that the Property was sold at a
foreclosure sale on August 11, 2011."  Id. at 2.  Plaintiff
demanded the "payment of policy limits for loss and damages
suffered."  Id.  It is undisputed that this was the first notice
to First American of the foreclosure action.

Upon receipt of the Title Claim, First American retained
attorney James Shea to explore what options might be available
to challenge the foreclosure sale.  After his review, Shea
determined that it was too late to take any action challenging
the foreclosure and that the Title Claim should be denied based
upon AHMSI's failure to provide timely notice of the foreclosure

proceeding as required under the Title Policy.  In the letter

denying the claim, ECF No. 40-17, Shea explained that the delay

in providing that notice precluded First American from

presenting meritorious arguments challenging the foreclosure

based on misidentification of the grantor in the Little Dimples

Deed of Trust.

On September 23, 2015, Plaintiff filed this action seeking

a declaratory judgment and monetary damages premised on

Defendant's alleged breach of the Title Policy.  Defendant moves

for summary judgment on the ground that the undisputed facts

establish that Plaintiff's notice of the foreclosure action was

untimely and that Plaintiff's untimely notice caused Defendant

actual prejudice.  Plaintiff counters in its cross motion that

Defendant cannot establish actual prejudice because, even with

timely notice, Defendant could not have prevented the

foreclosure sale.  In addition, Plaintiff contends that, because

Defendant had knowledge of the Little Dimples Deed of Trust from

its communications with NC Ventures in 2008, it is estopped from

asserting or has waived any right to deny the claim based upon

late notice.

## II. LEGAL STANDARD

Summary judgment is appropriate if the record before the

court "shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986). See also Felty v. Graves-Humphreys Co., 818 F.2d
1126, 1128 (4th Cir. 1987) (noting that trial judges have "an
affirmative obligation . . . to prevent factually unsupported
claims and defenses from proceeding to trial" (internal
quotation marks omitted)). A fact is material if it might
"affect the outcome of the suit under the governing law."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In
determining whether there is a genuine issue of material fact,
the Court "views all facts, and all reasonable inferences to be
drawn from them, in the light most favorable to the non-moving
party." Housley v. Holquist, 879 F. Supp. 2d 472, 479 (D. Md.
2011) (citing Pulliam Inv. Co. v. Cameo Properties, 810 F.2d
1282, 1286 (4th Cir. 1987)).

When both parties file motions for summary judgment, the
court applies the same standards of review. ITCO Corp. v.
Michelin Tire Corp., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The
court is not permitted to resolve genuine issues of material
facts on a motion for summary judgment – even where . . . both
parties have filed cross motions for summary judgment."). The
role of the court is to "rule on each party's motion on an
individual and separate basis, determining, in each case,

whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Accident and Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985). Furthermore, this Court has observed that "'[r]esolution by summary judgment is appropriate under Maryland law[1] where there is no dispute as to the terms of an insurance contract but there is a dispute as to the legal meaning to be accorded those terms. Bolton Partners Inv. Consulting Grp., Inc. v. Travelers Indem. Co. of America, Civ. No. RDB-05-2724, 2007 WL 776675, at *3 (D. Md. Mar. 15, 2007) (quoting Utica Mut. Ins. Co. v. Miller, 746 A.2d 935, 939 (Md. Ct. Spec. App. 2000)).

## III. DISCUSSION

Not only are the facts in this action largely undisputed, so are many of the legal implications of those facts. As summarized by Wells Fargo is its cross-motion, there is no dispute that First American issued the Title Policy to Wells Fargo's predecessor-in-interest to insure a first priority lien on the Property which was being pledged as collateral for the Plaintiff's Loan. It is undisputed that Wells Fargo is a beneficiary of the Title Policy and there is no dispute that Wells Fargo's lien was extinguished in a foreclosure action on a prior recorded deed of trust. It is undisputed that the

---

[1] The parties agree that Maryland law applies to this dispute.

foreclosure would have generated a covered claim under the Title
Policy, were it not for issues related to the late notice given
to First American.  As noted by First American, however, it is
also undisputed that Notice of the Title Claim was clearly
untimely under the terms of the Title Policy.  As discussed
below, an insurer can deny coverage of a title claim based on
late notice if, but only if, that late notice resulted in actual
prejudice to the insurer.  Thus, the first and primary legal
issue to be resolved is whether First American suffered actual
prejudice.

    In Allstate Insurance Company v. State Farm Mutual
Automobile Insurance Company, the Maryland Court of Appeals
discussed the standard for establishing "actual prejudice" to an
insurer in the context of a failure of notice or cooperation by
an insured.  767 A.2d 831, 840-843 (Md. 2001).  The Court of
Appeals began by reviewing the range of standards adopted by
other courts.  At one end, some courts require "that the insurer
demonstrate that, but for the breach, the result at trial either
would have been different" or that there is a "substantial
likelihood that the result would have been different."  Id. at
841 (emphasis added).  At the other end, some courts adopt a
"per se" approach, i.e., "that the insured's failure itself
establishes prejudice."  Id.  After noting that the problem with

both approaches "is that they tend to be keyed to the facts or circumstances of the particular case and do not take sufficient account of the very different circumstances, and thus the very different kinds of prejudice, that can be presented by breaches of these provisions," the Court of Appeals concluded that "it is very difficult to fashion a workable 'one size fits all' standard." Id.

The Fourth Circuit recently reviewed the Maryland standard for actual prejudice in a case involving late notice of a claim. St. Paul Mercury Ins. Co. v. Am. Bank. Holdings, Inc., 819 F.3d 728 (4th Cir. 2016). The court held that, "[w]hen a late notice precludes an insurer from exercising meaningful contractual rights provided to it by the policy . . . the insurer has suffered actual prejudice." Id. at 736 (emphasis added). The contract rights at issue there were similar to those in the Title Policy, including: "(a) the selection of appropriate defense counsel; (b) substantive defense strategies, including decisions regarding the filing and content of substantive motions; and (c) settlement negotiations." Id. Because of the insured's late notice, which was not given to the insurer until default judgment had been entered in the suit on which the claim was based, the court found that the insurer was precluded from exercising those rights. On that basis, the court affirmed the

13

district court's grant of judgment for the insurer, concluding that the insurer "was entitled, by reason of late notice, to deny insurance coverage" to its insured.  Id.

Earlier this year, in National Union Fire Insurance Company of Pittsburgh, PA v. The Fund for Animals, Inc., 153 A.3d 123 (Md. 2017), the Maryland Court of Appeals held that,

> [t]he actual prejudice element requires that the harm be more than possible, theoretical, hypothetical, speculative, or conjectural. . . .  We believe that the proper focus should be on whether the insured's willful conduct has, or may reasonably have, precluded the insurer from establishing a legitimate jury issue of the insured's liability, either liability vel non or for the damages awarded.  This requires "that the insurer show that the failure of cooperation has, in a significant way, precluded or hampered it from presenting a credible defense to the claim.  If the insured violates the notice provision without harming the interests of the insurer — i.e. without prejudice — then there is no reason to deny coverage.

Id. at 136 (emphasis added, internal quotations omitted).  The Court also held that the insurer must establish actual prejudice by a preponderance of the evidence.  Id. at 135-36.

In this action, First American asserts, in two closely related arguments, that it suffered actual prejudice both by being precluded from the meaningful exercise of its contractual rights under the Title Policy and by being precluded from presenting credible defenses in the foreclosure proceedings.  Specifically, as to the lost contract rights, First American

14

asserts that, had it been given timely notice, it could have retained counsel to intervene in the foreclosure action or to attempt to reach a settlement with the holder of the Little Dimples Deed of Trust.[2]  Intervening in the foreclosure or entering into settlement negotiations, of course, would bring no advantage to First American unless it had at least a credible defense.  As a credible defense, First American asserts it could have challenged the validity of the Little Dimples Deed of Trust on the ground that Little Dimples had no ownership interest in the Property to grant.  In the alternative, First American suggests that it could have maintained the priority of the Plaintiff's Deed of Trust over the Little Dimples Deed of Trust under the doctrine of equitable subrogation.

Wells Fargo counters that First American cannot establish any prejudice, because First American cannot establish with any certainty that, had it been given timely notice allowing it to intervene in the foreclosure, it would have prevailed in that proceeding.  In making this argument, Wells Fargo comes close to adopting the "but for" analysis rejected by the Maryland Court of Appeals.  This is evident in the manner in which Wells Fargo

---

[2] First American also asserts that it could have, at the least, established the lien of Plaintiff's Deed of Trust by either paying the amount owed on the Little Dimples Loan or by purchasing the Property at the foreclosure sale, with either option resulting in a payment less than the policy limits sought in this litigation.

quotes the <u>Fund for Animals</u> decision. Wells Fargo cites the
case as holding that actual prejudice is found "where the
insurer was precluded from establishing 'a <u>legitimate</u> jury issue
or presenting potentially <u>outcome-determinative</u> evidence' or
'presenting a credible defense.'" ECF No. 401-1 at 13 (quoting
<u>Fund for Animals</u>, 153 A.3d at 136, emphasis added by Wells
Fargo). What the Maryland Court of Appeal held was that the
evidence that the insurer would have presented need only be
"<u>potentially</u> outcome-determinative" and the defense "<u>credible</u>,"
not definitive  153 F.3d at 136 (emphasis added).

Wells Fargo's counter-arguments concerning these lost
defenses serve to actually support the credibility of those
defenses by demonstrating that those defenses are clearly
defenses that would have been seriously litigated. Wells Fargo
suggests that, had First American challenged the validity of the
Little Dimples Deed of Trust, the holder of that loan would have
had to argue that the deed of trust, while admittedly defective,
should be treated as an equitable mortgage, noting that, under
Maryland law, "'a defective instrument should be treated as an
equitable mortgage when the intent of the parties is obvious.'"
<u>Id.</u> at 15 (quoting <u>Taylor Elec. Co. v. First Mariner Bank</u>, 992
A.2d 490, 498 (2010)). That would have put the burden on the
holder of that deed to demonstrate the intent of the parties.

16

As First American observes, however, the intent of the parties
might not be that clear.  Prior to the foreclosure, Mr. Hardnett
informed Wells Fargo that he disputed the validity of the Little
Dimples Loan and that there was some confusion as to the
property that was to be secured by the loan and the lien
position that the loan would hold.  Def.'s Ex. J, at Ex. 8.  In
addition, as First American notes, equitable mortgages are
ineffective against a competing bona fide lender without notice.
Haley v. Corcoran, 659 F. Supp. 2d 714, 722 (D. Md. 2009)
(holding that "a deed absolute on its face may be treated in
equity as a mortgage [only] between the original parties and
against all persons deriving title from the grantee who are not
bona fide purchasers for value, without notice") (internal
quotations omitted).

In addition to challenging the validity of the Little
Dimples Deed of Trust, First American could have argued that the
Plaintiff's Deed of Trust maintained priority over the Little
Dimples Deed of Trust under the doctrine of equitable
subrogation.[3]  The doctrine provides that one who pays the lien

---

[3] This defense would have been available in the foreclosure
proceeding regardless of whether the Little Dimples Deed of
Trust was found valid or invalid.  Wells Fargo misrepresents the
record and asserts that "First American's corporate
representative, and their outside counsel, conceded during
deposition that if the [Little Dimples Deed of Trust] was not
defective there was nothing to challenge in the foreclosure, and

of another and takes a new lien as security will be subrogated

to the rights of the first lien holder as against any

intervening lien holders.  <u>G.E. Capital Mortgage Services v.</u>

<u>Levenson</u>, 657 A.2d 1170, 1175 (1995).  Here, it is undisputed

that when the Little Dimples Loan was made, it was intended to

be and was in a second lien position behind the lien of Purchase

Money Deed of Trust.  Since funds from the Plaintiff's Loan were

used to satisfy the Great Oak Loan, and funds from the Great Oak

Loan were used to satisfy the Purchase Money Loan, under this

doctrine, Plaintiff would have been able to assert priority over

the Little Dimples Deed of Trust at least in the amount of

$89,015.39, which was the balance of the Purchase Money Loan

remaining when refinanced by the Great Oak Loan.  While there

appears to be no Maryland cases applying the doctrine of

equitable subrogation to a series of refinancings, decisions

from other jurisdictions[4] have so applied it and this Court has

---

no actual prejudice from any delayed notice on that ground."
ECF No. 40-1.  To the contrary, First American's corporate
representative testified in his deposition that, if given timely
notice, First American could have argued equitable subrogation.
John Kaufman Dep. at 130.  Likewise, First American's outside
counsel testified in his deposition that equitable subrogation
was an argument that could have been successfully raised in the
foreclosure.  James Shea Dep. at 95-99.  Both viewed this
argument, however, as secondary to the "slam dunk" argument that
the deed of trust was invalid.  <u>Id.</u> at 107.

[4] <u>Ditech Fin. LLC v. Mikkelsen</u>, No. 3:15-CV-01214-HZ, 2016 WL
5329598, at *6 (D. Or. Sept. 20, 2016) (holding that a "'two-

held that the doctrine of equitable subrogation is "'a highly favored doctrine and expansively applied.'" Glen Burnie Mut. Sav. Bank v. United States, 733 F. Supp. 2d 623, 626, n.5 (D. Md. 2010) (quoting Rinn v. First Union Nat'l Bank, 176 B.R. 401, 408 (D. Md. 1995)).

For these reasons, the Court finds that the late notice given to First American resulted in actual prejudice.  While the prejudice caused by the inability to assert the equitable subrogation argument in the foreclosure might allow only a reduction in coverage under the Title Policy, the defense of an invalid deed of trust would have defeated the foreclosure altogether, justifying the denial of the entire claim.

To avoid this result, Wells Fargo argues in its cross motion that First American waived its right to deny coverage or is estopped from asserting that right based upon First American's awareness of the Little Dimples Deed of Trust through the 2008 exchange of correspondence with NC Ventures.  Wells Fargo asserts, repeatedly, that First American "chose to do nothing" after learning that NC Ventures was claiming a superior lien.  ECF No. 40-1 at 18; see also, id. at 20 ("First American

step subrogation seems to be entirely consistent with the general principles and purposes of the doctrine,'" quoting Jeffrey C. Stone, Inc. v. Central & Monroe, LLC (In re Mortgs., Ltd.), 444 Bankr. 585 (Bankr. D. Ariz. 2011)); Hare v. LPP Mortg., Ltd., No. MICV2001-01571-C, 30 Mass. L. Rptr. 651, 2013 WL 951152, at *3-4 (Mass. Sup. Ct. Mar. 8, 2013).

[had] actual knowledge and notice that the [holder of the Little Dimples Deed of Trust] was claiming a superior lien in March/April 2008, but it failed to do anything"); id. at 21 ("First American admits to receiving notice of a claim that would potentially implicate coverage, [but] First American did nothing"); id. at 21-22 ("First American was aware of the loss suffered by its insured, but did nothing"); ECF No. 42 at 7 ("First American had actual knowledge and notice that [NC Ventures] was claiming a superior lien in March/April 2008, but it failed to do anything"). Wells Fargo also posits that First American had a duty to notify its insured that NC Ventures was claiming a superior lien.

The Court finds no merit in Wells Fargo's waiver or estoppel arguments as the arguments are based upon several inaccurate factual premises. As noted above, upon receipt of the communication from NC Ventures, First American did not "do nothing." First American investigated the issue and concluded that the Little Dimples Deed of Trust was invalid. First American then communicated that conclusion to NC Ventures and NC Ventures never responded or otherwise challenged First American's conclusion regarding the Little Dimples Deed of Trust. Furthermore, nothing in the original correspondence from NC Ventures indicated that NC Ventures had taken, or intended to take, any action to enforce its purported lien priority. At this point in time, there was no loss suffered by its insured.

Wells Fargo suggests that First American should be estopped from denying its claim because "it failed to inform or notify its insured that there was a potential title defect, or that there may be a potential claim down the road, or that the insured should be careful to protect its lien going forward," ECF No. 42 at 8, and opines that "First American had an absolute duty to inform its insured of its potential loss". ECF No. 40-1 at 21. Wells Fargo does not provide the source of any duty on the part of First American to give notice of an alleged interest that First American determined to be invalid and there is nothing in the Title Policy requiring First American to give such notice. There is, however, a provision in the Title Policy that would have permitted the insured "to protect its lien going forward," i.e., the provision that required the insured to give timely notice to the insurer of an actual claim. This, the insured did not do.

## IV. CONCLUSION

For the above stated reasons, First American's motion for summary judgment will be granted, and Wells Fargo's motion for summary judgment will be denied. A separate order consistent with this memorandum will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: September 5, 2017